United States District Court
Southern District of Texas
**ENTERED**
November 30, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFF FALUDI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3467 |
| | § | |
| US SHALE SOLUTIONS LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeff Faludi ("Faludi" or "Plaintiff") brought this action against defendant US Shale Solutions LLC ("US Shale" or "Defendant") asserting claims for violation of the overtime provisions of the Fair Labor Standards Act ("FLSA").[1]  Pending before the court are Plaintiff's Motion for Leave to Amend His Complaint ("Plaintiff's Motion to Amend") (Docket Entry No. 18), Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 14), and Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's MPSJ") (Docket Entry No. 19).  For the reasons stated below, Plaintiff's Motion to Amend and Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted in part and denied in part.

---

[1]See Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1.

# I.  Factual and Procedural Background

## A.    Factual Background

Plaintiff Jeffrey Faludi received a Doctor of Jurisprudence in 1998.[2]  After he graduated from law school, Faludi worked as an attorney for several years as an associate and partner at a law firm, and then as in-house counsel for oil and gas companies such as Willbros International.[3]  Though Faludi was licensed to practice in Texas and Louisiana, his law licenses were suspended by August of 2014.[4]  US Shale was established in August of 2014 in Houston, Texas, to provide strategic solutions to the oil and gas industry.[5]  Faludi and the CEO of US Shale, Jerrit Coward, were colleagues at Willbros International.[6]  In August of 2014 US Shale became the parent company of four subsidiaries that provide site planning, construction, and maintenance support operations.[7]  Jerrit Coward

---

[2]See Faludi CV, Exhibit B-3 to Defendant's MSJ, Docket Entry No. 14-3, pp. 83-90.  Page citations throughout this Memorandum Opinion and Order are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.

[3]Id.

[4]See Oral and Videotaped Deposition of Jeff Faludi ("Faludi Deposition"), Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 4 line 16 - p. 5 line 5.

[5]See Declaration of Joseph Rozelle ("Rozelle Declaration"), Exhibit C to Defendant's MSJ, Docket Entry No. 14-4.

[6]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 21 line 22 - p. 22 line 7.

[7]See Rozelle Declaration, Exhibit C to Defendant's MSJ, Docket Entry No. 14-4.

offered Faludi a consulting position to help US Shale integrate its health and risk benefits between US Shale and the four companies it had purchased.[8]  Faludi agreed to work at US Shale and signed a contract entitled the Independent Contractor Master Consulting Services Agreement (the "Agreement") on November 6, 2014.[9]  The Agreement stated that Faludi "has been engaged to provide services to US Shale Solutions, Inc., in helping it obtain employee benefits."[10]  The Agreement also stated that US Shale would pay Faludi $1,000 for each day he performed services in Houston and $1,350 for each day he performed services outside of Houston.[11]  US Shale provided Faludi with an office and reimbursed him for his computer, cell phone, and work-related travel expenses.[12]  The Agreement required Faludi to provide US Shale with invoices that identified the hours or days he performed services.[13]  Faludi

---

[8]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 22 lines 7-21.

[9]See id. at 23 line 6 - 24 line 20; Independent Contractor Master Consulting Services Agreement ("Agreement"), Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, pp. 92-105.

[10]See Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 104 (US SHALE 000013).

[11]Id.

[12]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 51 lines 12-16; Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 105 (US SHALE 000014).

[13]See Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 104 (US SHALE 000013).

usually worked in the office five days a week and testified that it would be unusual if he were absent.[14]  Faludi submitted the required invoices -- many of which listed amounts less than $1,000 per day depending on the amount of time Faludi worked that day.[15]  Faludi performed various services for US Shale, including work on corporate development, IT management, administrative and human resource matters, and legal analyses of contracts and settlement negotiations.[16]  Faludi represented himself as "General Counsel" of US Shale "multiple times."[17]  Faludi's annualized compensation was approximately $260,000 during his engagement with US Shale.[18]  In January of 2016 Versa Capital Management, LLC ("Versa Capital") began providing management services to US Shale.[19]  In early March of 2016 a representative of Versa Capital spoke with Faludi to discuss the possibility of US Shale offering Faludi an executive

---

[14]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 8 lines 7-10.

[15]See id. at 43 line 9 - 44 line 11 and 45 lines 3-19; Invoices, Exhibit A-2 to Faludi Declaration, Docket Entry No. 19-1, pp. 28-52.

[16]See Declaration of Jeffrey E. ("Jeff") Faludi, Jr. ("Faludi Declaration"), Exhibit A to Plaintiff's MPSJ, pp. 1-3 ¶¶ 7, 14; Exhibits B-17 through B-21 and D-1 through D-9 to Defendant's MSJ, Docket Entry Nos. 14-3 and 14-5.

[17]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 70 lines 9-14.

[18]Id. at 33 lines 13-21.

[19]See Rozelle Declaration, Exhibit C to Defendant's MSJ, Docket Entry No. 14-4.

position, but US Shale decided not to do so.[20]  Faludi's relation-
ship with US Shale ended on March 31, 2016.[21]

## B.   Procedural History

Faludi filed a Complaint seeking damages for unpaid overtime
wages pursuant to the FLSA.[22]   In its answer US Shale asserted
several  affirmative  defenses,  including  that  Faludi  was  an
independent contractor, not an employee, and that if Faludi were an
employee he was paid on a salary basis and qualified as a law
professional or highly-compensated employee exempt from the FLSA
overtime pay requirements.[23]  On January 31, 2017, Faludi filed suit
against US Shale in the 334th District Court of Harris County,
Texas, for breach of contract and against Versa Capital for
tortious interference with contract.  US Shale and Versa Capital
filed  their  Original  Answer,  Affirmative  Defenses,  and
Counterclaims in state court on March 13, 2017.

US Shale filed its Motion for Summary Judgment in this court
on September 6, 2017.[24]  Two days later Faludi filed his Motion to

---

[20]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket
Entry No. 14, pp. 125:19-127:3, 129:1-21, 134:16-19.

[21]See Declaration, Exhibit A to Plaintiff's MPSJ, p. 12, ¶ 52.

[22]See Complaint, Docket Entry No. 1, pp. 1, 4-5.

[23]See Defendant's Answer and Affirmative Defenses ("Answer"),
Docket Entry No. 4. at 6-7.

[24]Defendant's MSJ, Docket Entry No. 14.

Amend and his Motion for Partial Summary Judgment.  US Shale filed a Response in Opposition to Plaintiff's Motion for Leave to Amend His Complaint.[25]  Both parties filed responses in opposition to the other party's summary judgment motions.[26]

## II.   Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to add a claim against US Shale for retaliation under the FLSA because US Shale filed counterclaims against him in state court.[27]  Defendant urges the court to deny Plaintiff's Motion to Amend because of Plaintiff's unjustified delay, the futility of the amendment, and the undue prejudice Defendant would suffer if the Motion to Amend is granted.[28]

### A.   Standard of Review

If a scheduling order has been entered establishing a deadline for amendments to pleadings, Federal Rule of Civil Procedure 15(a) provides the standard for requests to amend that are filed before

---

[25]Docket Entry No. 22.

[26]See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 20; Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Response"), Docket Entry No. 21.

[27]See Defendants Versa Capital Management, LLC's and US Shale Solutions, LLC's Original Answer, Affirmative Defenses, and Counterclaims, Defendants' Exhibit A to Plaintiff's Motion to Amend, Docket Entry No. 18-1, pp. 12-23.

[28]See Defendant's Amended Response in Opposition to Plaintiff's Motion for Leave to Amend His Complaint, Docket Entry No. 23, p. 1.

the scheduling order's deadline has expired, and Federal Rule of Civil Procedure 16(b) provides the standard for requests to amend that are filed after the scheduling order's deadline has expired. Marathon Financial Insurance, Inc., RRG v. Ford Motor Co., 591 F.3d 458, 470 (5th Cir. 2009); Fahim v. Marriott Hotel Services, Inc., 551 F.3d 344, 348 (5th Cir. 2008).

Plaintiff filed his Complaint on November 22, 2016 (Docket Entry No. 1); US Shale filed its Answer on December 23, 2016 (Docket Entry No. 4). The court held an initial pretrial and scheduling conference on March 3, 2017, and entered a Docket Control Order (Docket Entry No. 11). The Docket Control Order contained the notation "None" on the lines provided for deadlines to file motions to amend the pleadings and motions to add new parties. The court wrote "None" because Plaintiff's counsel indicated at the pretrial conference that he would need no further amendments or additions to the pleadings. See Breaux v. Tri Star Freight Systems, Inc., Civil Action No. H-16-846, 2016 WL 6581929, at *2 (S.D. Tex. November 7, 2016) ("The 'N/A' notation next to the amendment deadlines on the Scheduling Order indicates that, at the Rule 16 conference, the parties indicated that they would not need to amend their pleadings, not that the parties may amend their pleadings at any time without seeking leave to do so."). Nevertheless, Plaintiff filed the pending Motion to Amend on September 8, 2017. The court can understand how Plaintiff's

counsel would be confused by the entry of "None" and could conclude that the court meant that there were no deadlines for filing amended pleadings.   Neither Plaintiff's Motion to Amend nor Defendant's responses to it addressed the applicable Rule 16 standard.   Instead, each analyzed the factors the court would consider under Rule 15.   Because neither party addressed the requirements under Rule 16 and because of the confusion caused by the "None" entry on the Docket Control Order, the court will apply the more liberal Rule 15 standard.

## B.   Analysis

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading or service of Rule 12(b), (e), or (f) motions.  Fed. R. Civ. P. 15(a)(1)(A) and (B).   In all other cases Rule 15(a) requires the opposing party's written consent or leave of the court and states, "[t]he court should freely give leave when justice so requires." Id. at (2).   Rule 15(a) provides "a strong presumption in favor of granting leave to amend."   Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006).   "A decision to grant leave is within the discretion of the court, although if the court 'lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial."'"   State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-03 (5th Cir. 1995) (quoting

<u>Jamieson By and Through Jamieson v. Shaw</u>, 772 F.2d 1205, 1208 (5th Cir. 1985)).   The Supreme Court has identified five factors to consider in determining whether to grant leave to amend a complaint:   (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.  <u>United States ex rel. Steury v. Cardinal Health, Inc.</u>, 625 F.3d 262, 270 (5th Cir. 2010) (citing <u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962)).

### 1.   Delay

Rule 15(a) contains no time limit for permissive amendment but "'[a]t some point[,] time delay on the part of a plaintiff can be procedurally fatal.'"  <u>Whitaker v. City of Houston, Texas</u>, 963 F.2d 831, 836 (5th Cir. 1992) (quoting <u>Gregory v. Mitchell</u>, 634 F.2d 199, 203 (5th Cir. 1981).  "In that situation the plaintiff must meet the burden of showing that the delay was due to oversight, inadvertence, or excusable neglect, a burden which properly shifts to the party seeking to amend where apparent lack of diligence exists."  <u>Gregory</u>, 634 F.2d at 203 (internal citations omitted).

Where, as here, the defendant has moved for summary judgment before the plaintiff moves for leave to amend, the Fifth Circuit is hesitant to approve an amendment.  <u>See Overseas Inns S.A. P.A. v. United States</u>, 911 F.2d 1146, 1151 (5th Cir. 1990).  In <u>Overseas</u> the Fifth Circuit affirmed the district court's denial of the

motion to amend, reasoning that since the defendant had already
filed for summary judgment based on the current pleadings, "[t]o
grant [the plaintiff] leave to amend is potentially to undermine
the [defendant's] right to prevail on a motion that necessarily was
prepared without reference to an unanticipated amended
complaint. . . . A party should not, without adequate grounds, be
permitted to avoid summary judgment by the expedient of amending
its complaint" Id. The court further noted that one year before
the plaintiff filed its motion to amend, the plaintiff moved for
summary judgment. Id. "Accordingly, that motion represented 'that
the case was fully at issue, that all theories of liability and all
defenses had been presented, and that the case was ripe for summary
judgment.'" Id. quoting Pharo v. Smith, 621 F.2d 656, 664 (5th
Cir), reh'g granted cause remanded on other grounds, 625 F.2d 1226
(1980).

    Although Faludi filed his Motion for Summary Judgment on the
same day as his Motion to Amend, the same principles apply. Faludi
did not move to amend his Complaint until after Defendant filed its
Motion for Summary Judgment and nearly six months after Defendant
filed its state-court counterclaim. Plaintiff offers no explana-
tion for this delay.

    2.   Futility

       (a)  Applicable Law

    "[L]eave to amend need not be granted when it would be futile
to do so." F.D.I.C. v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994)

(citation omitted).  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."  <u>Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n</u>, 751 F.3d 368, 378 (5th Cir. 2014).  "Therefore, we review the proposed amended complaint under 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'"  <u>Id.</u> (quoting <u>Stripling v. Jordan Production Co., LLC</u>, 234 F.3d 863, 873 (5th Cir. 2000).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom Cloud v. United States</u>, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

<u>Swierkiewicz v. Sorema N.A.</u>, 122 S. Ct. 992, 997 (2002) (quoting <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974)).  To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v.</u>

<u>Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966).  When considering a motion to dismiss district courts are able to consider documents that are attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to the plaintiff's claim."  <u>Scanlan v. Texas A&M University</u>, 343 F.3d 533, 536 (5th Cir. 2003) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)).

    (b)  Analysis

To establish a prima facie case for a Title VII retaliation claim Faludi must show that:  "(i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action."  <u>Hernandez v. Yellow Transportation, Inc.</u>, 670 F.3d 644, 657 (5th Cir. 2012) (citing <u>Taylor v. United Parcel Service, Inc.</u>, 554 F.3d 510, 523 (5th Cir. 2008)).  An employment action is "materially adverse" if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington Northern and Santa Fe Railway Co. v.</u>

White, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks omitted).

Faludi alleges that "[t]he filing of a counter-claim in response to a FLSA lawsuit is [] clearly actionable as retaliation."[29]   Although the forms of actionable conduct have expanded beyond merely hiring, firing, failing to promote, and reassignment after Burlington Northern, some circuits, including the Fifth, have held that an employer's post-termination counterclaim is not actionable as retaliation under Title VII. Hernandez v. Crawford Building Material Co., 321 F.3d 528, 529 (5th Cir. 2003).

In Hernandez the plaintiff sued his employer under Title VII, and his employer brought a counterclaim for theft in its original answer. Id. at 529.  The plaintiff then supplemented his original complaint to allege that the employer's counterclaim was a retaliatory employment action under Title VII.  Id.  The Fifth Circuit recognized that other circuits have allowed a counterclaim to support a retaliation lawsuit, but that "companies and citizens have a constitutional right to file lawsuits, tempered by the requirement that the suits have an arguable basis."  Id. at 532 (quoting Scrivner v. Socorro Indep. Sch. Dist., 169 F.3d 969, 972 (5th Cir. 1999) (internal quotations omitted).  The court held that given its strict interpretation of retaliation claims "an

---

[29]See Plaintiff's Motion to Amend, Docket Entry No. 18, p. 3.

employer's filing of a counterclaim cannot support a retaliation claim in the Fifth Circuit." Id. at 532-33.

After Hernandez the Supreme Court broadened the standard for retaliation claims. See Burlington Northern, 126 S. Ct. at 2415. But neither the Fifth Circuit nor the Supreme Court has specifically addressed whether the new standard allows a counterclaim to support a retaliation claim under Title VII. This court recently held that Hernandez still applies in this circuit. See Madrigal v. Kleberg County, Civil Action No. 2:15-345, 2016 WL 4611287, *5-6 (S.D. Tex. Sept. 06, 2016) (explaining that "[b]ecause cases considering the question have treated Burlington Northern as undermining Hernandez's rationale rather than its holding, . . . Hernandez's holding that filing a counterclaim is not an adverse employment action remains precedent this Court is bound to follow.").

Because a counterclaim cannot otherwise support a retaliation claim, Plaintiff has not pled facts sufficient to support a claim for retaliation against US Shale. Plaintiff's proposed amendment would therefore be futile.

3.   Prejudice

The addition of a new claim for relief at this late date — nearly ten months after the Complaint was filed — would needlessly extend the litigation and cause the defendants additional expense. Absent any reasonable explanation from Plaintiff for the cause of his delay or any reasonable basis for the court to conclude that

-14-

the proposed new retaliation claim would not be futile, the court concludes that allowing the proposed amendment would not only require the court to abandon long-established deadlines, but would also delay the trial and prejudice the defendant.

    4.   <u>Conclusion</u>

Because of Plaintiff's delay, the futility of the proposed amendment, and the undue prejudice it would cause Defendant, Plaintiff's Motion to Amend His Complaint will be denied.[30]

### III.  <u>Motions for Summary Judgment</u>

Faludi argues that he was a non-exempt employee under the FLSA as a matter of law and that US Shale violated the FLSA by failing to pay him overtime.[31]   US Shale argues that Faludi was an independent contractor not subject to the FLSA, or otherwise was an exempt employee under the FLSA.[32]   Faludi and US Shale have both moved for summary judgment.

### A.   Standard of Review

Summary judgment is warranted if the movant establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

---

[30]Even assuming arguendo the Defendant's state court counter-claim could support Plaintiff's retaliation claim, the court would deny the Motion to Amend because of the Plaintiff's delay and the prejudice to Defendant of allowing an amendment at this late date.

[31]<u>See</u> Complaint, Docket Entry No. 1.

[32]<u>See</u> Defendant's MSJ, Docket Entry No. 14.

An examination of substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law." Id. A genuine issue as to a material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor. Id. at 2511.

Where, as here, both parties have moved for summary judgment, both "motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004). The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986); see also Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If a defendant moves for summary judgment on the basis of an affirmative defense, "it must establish beyond dispute all of the defense's essential elements." Bank of Louisiana v. Aetna U.S. Healthcare Inc., 468 F.3d 237, 241 (5th Cir. 2006). A defendant may also meet its initial burden by pointing out that the plaintiff has failed to make a showing adequate to establish the existence of an issue of material fact as to an essential element of plaintiff's

case. <u>Celotex Corp.</u>, 106 S. Ct. at 2552.  If the movant satisfies its initial burden, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other evidence that summary judgment is not warranted because genuine fact issues exist. <u>Celotex Corp.</u>, 106 S. Ct. at 2552.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). But conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. <u>Wallace</u>, 80 F.3d at 1047.  If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1132 (5th Cir. 1992).

**B.   Analysis**

The FLSA establishes a general rule that employers must pay overtime wages to employees who work in excess of forty hours during a seven-day workweek. <u>See Vela v. City of Houston</u>, 276 F.3d 659, 666 (5th Cir. 2001) (citing 29 U.S.C. § 207(a)(1)).  A plaintiff alleging a violation of the overtime requirement bears the burden of proving by a preponderance of the evidence that (1) he was in an employment relationship with the defendant, (2) he

-17-

was engaged in activities within the coverage of the FLSA, (3) he worked over forty hours within a workweek without overtime compensation, and (4) he is owed a definite amount of compensation. 29 U.S.C. § 207(a)(1); <u>Zermeno v. Cantu</u>, No. H-10-1792, 2011 WL 2532904, at *2 (S.D. Tex. June 24, 2011).

    1.   <u>Employee or Independent Contractor</u>

Under the FLSA "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). To determine whether a worker qualifies as an employee under the FLSA the court asks whether, as a matter of economic reality, the worker is economically dependent on the alleged employer or is instead in business for himself. <u>Hopkins v. Cornerstone America</u>, 545 F.3d 338, 343 (5th Cir. 2008). The court considers the following non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. <u>Thibault v. Bellsouth Telecommunications, Inc.</u>, 612 F.3d 843, 846 (5th Cir. 2010); <u>Hopkins</u>, 545 F.3d at 343. "No single factor is determinative . . . each factor is a tool used to gauge the economic dependence of the alleged employee [on the alleged employer], and each must be applied with this ultimate concept in mind." <u>Hopkins</u>, 545 F.3d at 343 (citations omitted) (emphasis in

-18-

original).   The contractual designation of the worker as an independent contractor is not necessarily controlling.  Thibault, 612 F.3d at 845-46.   The ultimate determination of whether an individual is an employee within the meaning of the FLSA is a question of law.  Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1045 (5th Cir. 1987).

Defendant does not dispute that Plaintiff was not paid overtime compensation or that he was engaged in activities within the coverage of the FLSA, but instead argues that Plaintiff was an independent contractor based on facts supporting all five factors. Defendant argues that it did not control the manner in which and method by which Plaintiff provided services because Faludi worked independently and managed his own workload and schedule.[33] Defendant cites an email from US Shale's Chief Financial Officer and Treasurer to Faludi that lists tasks and writes, "[i]f you accept these missions let me know."[34]   Defendant argues that Plaintiff controlled his opportunity for profit and loss because he could choose to accept projects[35] and that Plaintiff made

---

[33]See Defendant's MSJ, Docket Entry No. 14, p. 15 (citing Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 36 line 11 - p. 37 line 13 and p. 40 line 12 - p. 41 line 14).

[34]See Email, Exhibit B-5 to Defendant's MSJ, Docket Entry No. 14-3, p. 107.

[35]See Defendant's MSJ, Docket Entry No. 14, p. 16 (citing Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 36 line 11 - p. 37 line 13 and p. 40 line 12 - p. 41 line 14).

investments in his business by providing his own phone and computer, paying his own continuing education expenses, and investing in home office equipment.[36]  As to the fourth factor, Defendant argues it gave Faludi certain projects, such as analyzing contracts and evaluating litigation exposure, precisely because of his legal education, experience, and unique skills he could apply to them.[37]  Defendant argues that Faludi's job lacked permanency because he performed services for US Shale for about a year and a half and could terminate his employment relationship with 15 days' notice.[38]  Defendant argues that Faludi was not economically dependent on US Shale because he was able to pursue other business opportunities while working for US Shale[39] and because he did not seek work after his engagement with US Shale ended.[40]

---

[36]See Defendant's MSJ, Docket Entry No. 14, p. 16 (citing Tax Records, Exhibit B-22 and B-23 to Defendant's MSJ, Docket Entry No. 14-3, pp. 161-173).

[37]See Defendant's MSJ, Docket Entry No. 14, p. 17 (citing Exhibits D-1 through D-9 of Declaration of Brad Culberson, Exhibit D to Defendant's MSJ, Docket Entry No. 14-5, pp. 1-13; Exhibits B-17 through B-21 to Defendant's MSJ, Docket Entry No. 14-3, pp. 150-160).

[38]See Defendant's MSJ, Docket Entry No. 14, p. 17; Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 94 (US SHALE 000003).

[39]See Defendant's MSJ, Docket Entry No. 14, p. 18 (citing Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 18 lines 8-13).

[40]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 7 lines 3-22.

Plaintiff responds that Defendant's MSJ should be denied and his own MPSJ on the same issue should be granted because the facts show that Faludi was an employee.[41]   Faludi argues that he worked full-time under US Shale's controlled schedule; "he went to a US Shale office daily; he had no opportunity to 'lose' money; he was provided an office and reimbursed for his computer, cell phone and work-related travel; and he worked exclusively for US Shale during his tenure with no other source of income."[42]   He points out that the Agreement's non-compete clause prohibited him from working for US Shale's competitors worldwide.[43]

Although Faludi signed the "Agreement," which stated that "[t]he Consultant shall be an independent contractor . . .,"[44] the contractual designation of a worker as an independent contractor is not necessarily controlling. Thibault, 612 F.3d at 845-46.  If the contract was not reflective of the true relationship and the defendant exercised considerable control over the plaintiff, a reasonable jury could conclude that in economic reality the plaintiff was an employee.  Because Faludi's Declaration, Plaintiff's MPSJ, Defendant's Exhibits, and Defendant's MSJ raise

---

[41]See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 20; Plaintiff's MPSJ, Docket Entry No. 19.

[42]See Plaintiff's MPSJ, Docket Entry No. 19, p. 6.

[43]Id.

[44]See Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 93 (US SHALE 000002).

genuine issues of material fact with respect to the five factors the court is to consider in determining whether the plaintiff is an employee or an independent contractor under the economic reality analysis, neither party is entitled to summary judgment.

2.  Exemptions Under the FLSA

US Shale argues that even if Faludi were an employee, he was exempt as a matter of law under the highly-compensated professional exemption and the practice of law professional exemption.[45]  An employee is entitled to overtime compensation unless the employer can prove that the employee falls within one of several statutory exemptions.  Vela v. City of Houston, 276 F.3d 659, 666 (5th Cir. 2001).  "[T]he ultimate determination of whether an employe[e] qualifies for an exemption under the FLSA is a question of law."  Singer v. City of Waco, Texas, 324 F.3d 813, 818 (5th Cir. 2003) (citing Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (5th Cir. 2000)).  "That ultimate determination, however, relies on many factual determinations that can be resolved by a jury."  Id.  The inquiry into an employee's exempt status is "intensely factbound and case specific."  Dalheim v. KDFW-TV, 918 F.2d 1220, 1226 (5th Cir. 1990).  Exemptions from the FLSA's general rule are narrowly construed against the employer, and the application of an exemption is an affirmative defense on which the employer bears the burden of proof.  See Allen v. Coil Tubing

---

[45]See Defendant's MSJ, Docket Entry No. 14, pp. 18-19.

Services, L.L.C., 755 F.3d 279, 283 (5th Cir. 2014) (citing Songer v. Dillon Resources, Inc., 618 F.3d 467, 471 (5th Cir. 2010)).

Under the FLSA "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . . )" are exempt from the FLSA's overtime pay requirements. 29 U.S.C. § 213(a)(1). Some highly-compensated employees are also exempt from the FLSA requirements. 29 C.F.R § 541.601. "Job titles are not determinative. Rather, it is the employee's salary and primary duties that determine his or her qualification as an exempt employee. 29 C.F.R. §§ 541.2, 541.700(a)." Ferrara v. 4JLJ, LLC, 150 F. Supp. 3d 813, 816 (S.D. Tex. Jan. 11, 2016).

### (a)   Highly-Compensated Professional Exemption

#### (i)   Applicable Law

US Shale argues that Faludi's job duties "qualify him as a highly compensated exempt employee under either the learned professional or administrative exemptions."[46]  To qualify for the "highly-compensated employee" exemption the employee must (1) make at least $100,000 in annual compensation, which must include at least $455 per week paid on a salary or fee basis, and (2) "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative

---

[46]Id. at 23.

or professional employee . . . ."   29 C.F.R. §§ 541.600(a), 541.601(a), 541.601(b)(1); 541.602; see also Zannikos v. Oil Inspections (U.S.A.), Inc., 605 F. App'x 349, 359 (5th Cir. 2015). The $100,000 threshold can include commissions and certain bonuses. See id. § 541.601(b)(1).   The $100,000 requirement may be satisfied if the employee works less than the full year as long as he is paid a pro rata portion of the $100,000 based on the period of time he worked.   See id. § 541.601(b)(3).

The court concludes that Faludi performed the duties of a learned professional.   Duties of a learned professional include work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.   29 C.F.R § 541.301(a).   As explained in Part III(B)(2)(b) below, Faludi applied his specialized legal knowledge, acquired through his education and experience, to perform services for US Shale and its subsidiaries such as reviewing contracts and strategic counseling on other legal matters.

### (ii)   Salary-Basis

An employee is considered paid on a "salary basis" where the employee's regular, predetermined pay "is not subject to reduction because of variations in the quality or quantity of the work performed."   29 C.F.R. § 541.602(a).   An exempt employee "must receive the full salary for any week in which the employee performs

any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work" _Id._  An employee's compensation need not be calculated weekly:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, _if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked_, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.

_Id._ § 541.604(b) (emphasis added).  Although exempt status does not apply "when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter,'" _Auer v. Robbins_, 117 S. Ct. 905, 911 (1997), the regulations contain certain exceptions to the prohibition against deductions from pay.  _See id._ § 541.602(b).  For instance, the employer may make deductions from pay "when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."  _Id._  § 541.602(b)(1).

An employer who makes improper deductions may also lose the exemption "if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  _Id._ § 541.603(a). This intent is demonstrated if the employer has an "actual practice of making improper deductions" or "an employment policy that

creates a 'significant likelihood' of such deductions." Id.; Auer, 117 S. Ct. at 911.   "[A]n improper deduction alone will not necessarily render an employee non-exempt; intent is key." Fraser v. Patrick O'connor & Associates, L.P., 2016 WL 4159753, Civil Action No. 4:11-03890, at *7 (S.D. Tex. Aug. 4, 2016).

> If an employer has a clearly communicated policy that prohibits the improper pay deductions . . . and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints.

29 C.F.R. § 541.603(d).

The Agreement between Faludi and US Shale stated "Company shall pay Consultant the following amounts while working for Company on the Project" and provides a table as follows:[47]

| Domestic Hourly Rate | Houston, TX Day Rate | Day Rate for Work Outside of Houston, TX. | *Signing Bonus | **Retention Bonus |
|---|---|---|---|---|
| N/A | $1,000USD | $1,350USD | N/A | N/A |

The Agreement also required Faludi to provide invoices which "shall clearly specify the hours or days worked, the Services provided, and any expenses incurred."[48]   In his Motion for Partial Summary Judgment Faludi argues that his compensation records show that

---

[47]See Agreement, Exhibit B-4 to Defendant's MSJ, Docket Entry No. 14-3, p. 104 (US SHALE 000013).

[48]Id. ¶ 4.

every invoice he submitted to US Shale contains at least one entry with a daily rate less than $1,000.[49]   In his deposition Faludi explains why less than $1,000 for one day would appear on an invoice:

> Q. Okay.  And I see there's, you know, a thousand dollars a day and -- and I notice that if you look down there at Tuesday, November 18th and Wednesday, November 19th there's $500.  Why would there be $500,000 -- $500, not 1,000?
>
> A. You know, just -- that was probably a weekend. Could have been -- it could have been any day.
>
> Q. Well, it says Tuesday and Wednesday on –
>
> A. Okay.  Oh, yeah, it sure does.  Right on the side.
>
> Q. Yeah.
>
> A. So in any event, it just means that I did not go to the office and work a full day.
>
> Q. Okay.  And I -- I didn't notice anything in your independent contractor agreement about partial days or anything like that.  So where did this come from that you only submitted a bill for $500 in -- in that day and not –
>
> A. Just me being a nice guy and not billing them for a full day when I wasn't there but half a day or a quarter of a day or whatever that day was.
>
> Q. So then, like, on Thursday, November 11th and then –
>
> A. I wasn't even there, so I didn't bill that day.
>
> Q. Yeah.  So Wednesday, Thursday, and Friday the next week, no -- nothing billed.  So I assume that means you didn't work those days?
>
> A. That would be correct.

_____

[49]See Invoices, Exhibit A-2 to Faludi Declaration, Docket Entry No. 19-1, pp. 28-52.

. . .

Q. So if you look down there, this is June of 2015. It says June 13th, 2015, June 14th, 2015. That's a week -- those are weekend days?

A. Yes, sir.

Q. You would apply that same -- if you worked a morning, you'd put a half a day. If you worked, you know, into the afternoon, you'd put 750. If you worked just a couple hours or so, then you'd put 250? Is that kind of what you did?

A. That's what I did, yes, sir; and I -- I tried to correspond the rates for the cost of the computer. So on -- I prorated those along with it.

Q. And you never -- did anybody ever tell you to do that or did you ever tell anybody how you were doing it or somebody said, "Well, why did you only put down 750 for this Friday?" Did -- any discussions on that at all?

A. Nobody ever asked. No discussions.[50]

Faludi argues that because his daily pay was reduced based on the time he worked and because Defendant knew about and approved of the reductions, he was not paid on a salary basis.[51] Defendant responds that "it was Faludi who unilaterally and arbitrarily reduced the amounts he invoiced US Shale, contrary to the terms of his Independent Contractor Agreement."[52] Defendant also argues that the $1,000 daily amount guaranteed under the Agreement therefore

---

[50]See Faludi Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 14-3, p. 43 line 9 - p. 44 line 11 and p. 45 lines 3-19.

[51]See Plaintiff's MPSJ, Docket Entry No. 19, p. 9; Plaintiff's Reply, Docket Entry No. 25, p. 6; Email and Invoices, Exhibit A-3 (pp. 53-67) and A-4 (pp. 68-70) to Faludi Declaration, Docket Entry No. 19-1.

[52]See Defendant's Response, Docket Entry No. 21, pp. 6, 18.

"guaranteed Faludi at least $1,000.00 for each week he performed any services, thus exceeding the $455.00 threshold."[53]  The summary judgment evidence establishes that US Shale actually paid Faludi at least the minimum guarantee for every week in which he performed services despite deductions on the invoices made by Faludi.[54]  But "a claim that an employee actually was paid more than $455 each week is distinct from a showing that they were guaranteed to receive that amount."  Keen v. DXP Enterprises, Inc., 2016 WL 3253895, Civil Action No. 5:15-137-OLG, at *5 (W.D. Tex. June 6, 2016).

The precise question raised by the parties' arguments is whether the language of 29 C.F.R. § 541.602(a) allowing the exemption as long as the employee's predetermined pay "is not subject to reduction because of variations in the . . . quantity of the work performed" includes a voluntary reduction by the employee as opposed to a reduction by the employer.  Neither party has cited any controlling authority on this issue.  The court concludes that the purpose of the regulation is to prevent employers from promising a guaranteed amount of compensation and later reducing that amount to the detriment of the employee.  Plaintiff's argument is inconsistent with this purpose.  The regulation is designed to protect employees from an employer's power to make improper

---

[53]See Defendant's MSJ, Docket Entry No. 14, pp. 22-23.

[54]See Defendant's Response, Docket Entry No. 21, pp. 17-18.

deductions, not to give employees the ability to eliminate employer reliance on exemptions to the FLSA by reducing their own compensation.   Even though Faludi reduced his own compensation, $1,000 per day was guaranteed if he showed up for work and performed the agreed upon services.   This satisfies the minimum guaranteed amount required to be paid on a salary basis.   Because the court concludes that Faludi was paid on a salary basis and performed the duties of a learned professional, Defendant's Motion for Summary Judgment will be granted as to this exemption.

(b)   Practice of Law Professional Exemption

For the professional exemption to apply persons employed in a professional capacity must satisfy certain work descriptions and be compensated on a salary or fee basis.   29 C.F.R. § 541.300.   The term "employee employed in a bona fide professional capacity" also means "[a]ny employee who is the holder of a valid license or certificate permitting the practice of law . . . and is actually engaged in the practice thereof . . . ."   Id. § 541.304(a)(1).   The salary and primary duty requirements of 29 C.F.R. § 541.300 do not apply to employees covered under this exemption.   Id. § 541.304(d). Thus, the relevant question is whether Faludi was "actually engaged in the practice" of law with a "valid license or certificate permitting the practice of law."

The Texas Government Code defines the "practice of law" as "the giving of advice or the rendering of any service requiring the

-30-

use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined." Tex. Gov't Code § 81.101(a).

The evidence shows that Plaintiff engaged in the practice of law. Exhibits B-14 and B-17 through B-21 to Faludi's Deposition reflect that he analyzed case strategies and coordinated with law firms about settlement and other litigation matters.[55] Exhibits D-1 through D-9 to Defendant's MSJ show that Faludi revised or analyzed contracts like Master Service Agreements, Confidentiality and Non-Disclosure Agreements, and other Compete and Project Agreements for US Shale.[56] He reviewed the contracts, made proposals or revisions, and pointed out strengths and weaknesses in them.[57] Faludi used his legal judgment and skill gained through his legal education and experiences to analyze contracts and assess legal risks during his time at US Shale. The court therefore concludes that Faludi was engaged in the practice of law while employed by US Shale.

Faludi argues that he is nevertheless not exempt because he did not have a valid license as required by 29 C.F.R.

---

[55]See Exhibits B-14, p. 146; B-17, p. 150; B-18, p. 155; B-19, pp. 156-158; B-20, p. 159; B-21, p. 160 to Defendant's MSJ, Docket Entry No. 14-3.

[56]See Exhibits D-1 to D-9 to Defendant's MSJ, Docket Entry No. 14-5.

[57]Id.

-31-

§ 541.304(a).[58]  Faludi was licensed to practice in Louisiana and
Texas, but his licenses were suspended during the time he worked
for US Shale.[59]  Although Faludi's licenses are technically valid,
he is not eligible to practice law.  The court therefore concludes
that Plaintiff did not hold a valid license permitting the practice
of law as the exemption requires.

Defendant argues that Faludi is "estopped from denying his
exempt status under the practice of law professional exemption by
his own actions and repeated declarations to the IRS, US Shale, and
others that he was in fact a practicing attorney during the
relevant time period."[60]  Plaintiff responds that the estoppel
doctrine does not apply because there is "no evidence in the record
that US Shale hired Faludi to be a lawyer based on Faludi's
*misrepresentation* that he had a valid law license."[61]  Faludi did
not tell anyone at US Shale that his licenses were suspended but he
reasoned "I don't think anybody ever asked me because no one hired
me to be a lawyer."[62]

"It is unclear whether the equitable defenses of waiver,
estoppel, unclean hands, and laches are available under the FLSA."

---

[58]<u>See</u> Plaintiff's MPSJ, Docket Entry No. 19, p. 9.

[59]<u>See</u> State Bar Letters, Exhibit A-5 to Plaintiff's MPSJ,
Docket Entry No. 19-1, pp. 72-74.

[60]<u>See</u> Defendant's MSJ, Docket Entry No. 14, p. 21.

[61]<u>See</u> Plaintiff's Reply, Docket Entry No. 25, p. 8.

[62]<u>See</u> Faludi Deposition, Exhibit B to Defendant's MSJ, Docket
Entry No. 14-3, p. 70 lines 7-8.

See <u>Tran v. Thai</u>, Civil Action No. H-08-3650, 2010 WL 5232944, at
*7 (S.D. Tex. Dec. 16, 2010) (applying the doctrine that estoppel
is generally inapplicable to FLSA claims and granting the
plaintiff's motion for partial summary judgment as to the
defendant's affirmative defense of, inter alia, estoppel); <u>see also</u>
<u>Ayers v. Consolidated Construction Services of SW Florida, Inc.</u>,
Civil Action No. 2:07-123-FtM-29DNF, 2007 WL 4181910, at *2 (M.D.
Fla. Nov. 26, 2007) (granting motion to strike laches and estoppel
affirmative defenses because of "the general rule that an employee
cannot waive her rights under the FLSA without supervision by the
Secretary of Labor or the Court"); <u>Perez-Nunez v. N. Broward</u>
<u>Hospital District</u>, Civil Action No. 08-61583-MOORE, 2009 WL 723873,
at *2 (S.D. Fla. March 13, 2009) ("The doctrines of waiver,
estoppel and laches are generally not applicable to FLSA claims.").

There is, however, at least one circumstance in which estoppel
applies in an FLSA case. In <u>Brumbelow v. Quality Mills, Inc.</u>, 462
F.2d 1324, 1327 (5th Cir. 1972), the Court found "*[o]n the narrow
facts of this [FLSA] case*, the court correctly granted a directed
verdict on the basis that the appellant was estopped and could not
profit from her own wrong in furnishing false [reports of hours
worked] to the employer" (citations omitted) (emphasis added).
District courts have refused to apply estoppel in FLSA claims based
on <u>Brumbelow</u>'s holding without similar facts. <u>See, e.g.</u>, <u>Cordero</u>
<u>v. Voltaire, LLC</u>, Civil Action No. A-13-CA-253-LY, 2013 WL 6415667,

-33-

at *10 n.14 (W.D. Tex. Dec. 6, 2013); <u>Allen v. City of Texas City</u>, Civil Action No. G-10-176, 2014 WL 2547763, at *5 (S.D. Tex. June 5, 2014); <u>Howard v. John Moore, L.P.</u>, Civil Action No. H-13-1672, 2014 WL 5092469, at *1 (S.D. Tex. Oct. 9, 2014).

The facts of this case are not similar to those in <u>Brumbelow</u>. Defendant has provided no case law, and the court is not aware of any, that would apply estoppel under the facts of this case.  Even if estoppel were available in this case, estoppel is a fact issue for a jury to decide.  The practice of law professional exemption does not apply because Faludi did not hold a valid license.  The court will therefore deny Defendant's Motion for Summary Judgment on that issue.

### IV.  Conclusions and Order

For the reasons stated in Section II above, Plaintiff's Motion for Leave to Amend His Complaint (Docket Entry No. 18) is **DENIED**.

For the reasons stated in Section III above, Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 19) is **DENIED**.

For the reasons stated in Section III above, Defendant's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED IN PART** and **DENIED IN PART**.  Because the court has concluded as a matter of law that Faludi was exempt from the FLSA overtime provision under the highly compensated professional exemption, the

-34-

court will enter a final judgment that Faludi take nothing from defendant and that this action be dismissed with prejudice.

**SIGNED** at Houston, Texas, this 30th day of November, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE